### APPEAL OF RICKS-McCREIGHT LUMBER Co.

Docket No. 3656.   Promulgated December 8, 1926.

Evidence *held* insufficient to establish that the loss involved herein was a loss of the petitioner.

*George D. Wick, Esq.*, for the petitioner.
*George G. Witter, Esq.*, for the Commissioner.

This appeal is from the determination of a deficiency in income and profits taxes for the years 1918 and 1920, in the amount of $25,268.57.

#### FINDINGS OF FACT.

The petitioner is a Pennsylvania corporation with its principal office and place of business at Pittsburgh.  During the years 1917 to 1920, inclusive, it was engaged in the wholesale lumber brokerage business.  The capital stock of the corporation during the years 1917, 1918, 1919 and until about July 1, 1920, was owned by C. V. McCreight and W. R. Ricks in equal amounts.  Ricks disposed of his shares of stock about July 1, 1920.  McCreight and Ricks were, respectively, president and secretary of the corporation.  Each of them also acted as a salesman.

For the year 1918, the salaries of Ricks and McCreight were $4,000 and $4,800, respectively, and, in addition, each received a commission of 4 per cent on the total sales made by him.  For each of the years 1919 and 1920, the board of directors of the corporation fixed the salaries of Ricks and McCreight at $4,000 and $4,800, respectively, and provided that "in addition to such salary, they shall each receive a commission or bonus of 50% of the net earnings, to be settled and paid at the close of the year."  The "50% of the net earnings" was intended by the board of directors to mean that each of the persons named should receive, in addition to his salary, 50 per cent of the net profits on sales made by him.

During the year 1917 it became difficult for the petitioner to obtain sufficient lumber to supply its trade, and McCreight and Ricks, president and secretary, respectively, and also the only stockholders of the petitioner, began to look around with a view to finding an adequate supply of lumber.  They finally met with one J. B. Justice,

who held, under a contract with one George W. Hopkins and the Eastern Land & Timber Co., dated October 2, 1916, the timber rights in large tracts of timber located near Florence, S. Car.   The contract of October 2, 1916, between Justice and Hopkins and the Eastern Land & Timber Co., provided, among other things, that the contract should not be assigned by Justice without the consent of Hopkins, that Justice would cut not less than 5 million feet of lumber the first year that the contract was in force, and would endeavor to cut not less than 12 million feet each year thereafter, and that upon any breach of the contract by Justice the contract should be null and void at the option of Hopkins and the Eastern Land & Timber Co. and that they should have the right to enter and take possession of the land.   Justice did not have sufficient money to cut and market this timber, and it was agreed on or about November 8, 1917, by and between Ricks, McCreight and Justice, that Ricks and McCreight would furnish the money which would be required to build a mill and a railroad to the timber, estimated at about $25,000, and that a corporation would be formed to carry on the business of cutting the timber controlled by Justice and converting it into lumber. Accordingly, a corporation called the Giles Bay Lumber Co. was formed, under the laws of South Carolina, and Justice assigned to the new corporation his contract for timber rights heretofore referred to.   So far as the records show, this assignment was never approved or ratified by Hopkins and the Eastern Land & Timber Co.   Also, at the time the contract was assigned by Justice to the Giles Bay Lumber Co., he was in default in that he had failed to cut 5 million feet of lumber during the first year of the life of the contract as provided therein.

On November 24, 1917, a written contract was entered into by and between the Giles Bay Lumber Co., Justice, McCreight, and Ricks, which provided that Justice should be entitled to one-half, or $12,500, of the authorized capital stock of the Giles Bay Lumber Co. and that Ricks and McCreight should each be entitled to one-fourth, or $6,250, of the authorized capital stock, but that no part of the said capital stock should be issued to them, except two shares to Justice and one share each to Ricks and McCreight, to enable them to qualify as directors until " all the present outstanding indebtedness of said company is fully paid," and that none of the stockholders could dispose of his stock, either before or after the issue thereof, except with the unanimous consent of all of the stockholders.   The contract of November 24, 1917, also provided:

(g) That W. R. Ricks shall be Vice-President of Giles Bay Lumber Company, Inc., for the entire period it is engaged in carrying out the fulfillment of the conditions and covenants of the aforesaid contract of October 2nd, 1916, and this contract, and as such officer he shall exercise and enjoy such rights, privi-

leges and authorities as legally belong to the office of Vice President of said company.

That said Vice President shall be paid no salary for his services as such, it being expressly understood and agreed that his compensation for said services are and shall be covered by the commissions of ten per cent (10%) allowed Ricks, McCreight Lumber Company under its contract as Sales Agent on all sales of lumber made by it f. o. b. cars, Florence, South Carolina, or f. o. b. cars at any other place in said State where said Giles Bay Lumber Company, Inc., may hereafter establish a plant.

(h) That C. V. McCreight shall be Secretary-Treasurer of Giles Bay Lumber Company, Inc., during the period it is engaged in the carrying out and fulfillment of the covenants and conditions of the contract of October 2nd, 1916 and this contract, and as such he shall exercise and enjoy such privileges and conditions as legally belong to the office of Secretary-Treasurer of the corporation.

\*          \*          \*          \*          \*          \*          \*

The said Secretary-Treasurer shall be paid no salary for his services as such, it being expressly understood and agreed that his compensation for such services is covered by the ten per cent (10%) commissions paid Ricks, McCreight Lumber Company as Sales Agent on all sales of lumber made by it f. o. b. cars Florence, South Carolina, or at any other place in said State where said company may hereafter establish and maintain a lumber plant.

On or about the —— day of November, 1917, the Giles Bay Lumber Co. and the petitioner entered into a written contract, which provided that the petitioner should be sales agent for the Giles Bay Lumber Co. and receive a commission of 10 per cent of the gross amount collected from the sale of lumber.

During the years 1917 and 1918 money was borrowed by or was advanced for the Giles Bay Lumber Co. by the petitioner or by Ricks and McCreight individually, in the amount of $65,000. The money so borrowed by, advanced to, or expended for the Giles Bay Lumber Co., was secured on notes, of which two for $5,000 each were signed by the Giles Bay Lumber Co., three for $5,000, $7,500 and $27,-500, respectively, by McCreight and Ricks, and three for $5,000 each by the petitioner. During the year 1918 the petitioner paid, as interest or principal on these notes or renewals thereof, the amount of $19,-234.80, all of which was charged to the personal accounts of McCreight and Ricks in equal amounts. In January, 1919, there was set up on the petitioner's books an account, denominated " Trust Fund In re Giles Bay Indebtedness," to meet the notes in question. This fund was started by transferring to the " Trust Fund " account credit balances in the personal accounts of McCreight and Ricks in the amount of $11,627.78. Thereafter, during the year 1919, the amount of $35,000 was transferred to the " Trust Fund " account from the " Commission Account " of the petitioner. The " Commission Account " represented money earned by the petitioner as commissions on sales and was, in substance, the same as the profit and loss account. On June 30, 1920, the " Trust Fund " was credited with

$1,551.10. The record does not disclose from what source that credit came. During the years 1919 and 1920 payments were made on the notes in question out of the "Trust Fund," and the final payment of principal and interest was made on August 18, 1920. The total amount paid by the petitioner, as herein set forth, was $65,000 principal and $4,346.39 interest. After the notes and interest had been paid in full, there remained in the "Trust Fund" a balance of $1,-067.29, which balance was transferred to the personal accounts of McCreight and Ricks.

The capital stock of the Giles Bay Lumber Co. was never issued, except the two shares to Justice and one share each to Ricks and McCreight to qualify them as directors; the mill and railroad were never completed and the corporation never manufactured or sold any lumber. In the year 1920, Justice demanded additional money and McCreight went to Florence, S. Car., to investigate conditions and found that the Giles Bay Lumber Co. had not only spent all of the money that had been advanced for the purpose of building the mill and the railroad, but had also incurred indebtedness. He was advised by Justice and Hopkins that $100,000 additional would be required. He said to Justice and Hopkins, " We will not put it up, we are through." He then returned to Pittsburgh and informed Ricks what he had done and Ricks approved of the action taken by him. Thereafter, Ricks, McCreight and the petitioner did not have anything further to do with the Giles Bay Lumber Co., except, as hereinabove set forth, to pay the indebtedness that had been incurred to finance that company.

The petitioner, in its original income and profits-tax returns for the years 1918, 1919, and 1920, did not claim any deduction on account of any loss sustained in the Giles Bay Lumber Co. transaction. McCreight and Ricks, however, in their individual returns for those years, claimed that the losses incurred in the transaction were their individual losses and they were allowed deductions therefor in the total amount of $73,124.85. Subsequently, the petitioner claimed that the loss in the Giles Bay Lumber Co. transaction was a loss to it and not to McCreight and Ricks as individuals, and they claimed deductions therefor for the years 1918, 1919, and 1920, in the total amount of $69,346.39. The Commissioner refused to allow the deductions claimed.

OPINION.

MARQUETTE: It is alleged, in the petition filed herein, that Ricks and McCreight entered into the Giles Bay Lumber Co. transaction, not as individuals, but as agents for the petitioner; that the loss incurred in that transaction was the petitioner's loss and that it is

entitled to deduct the amount thereof in computing its net income for the years 1918, 1919, and 1920. However, at the hearing, it abandoned its contention that it is entitled to spread the loss over the years named, and contended that the loss actually occurred in the year 1920 and that the entire amount thereof is a proper deduction in that year.

The testimony and other evidence presented herein are conflicting, contradictory, and confusing. Indeed, from the record, it is almost impossible to ascertain what the true facts of the transaction in question were. While there is some testimony to the effect that Ricks and McCreight entered into the transaction on behalf of the petitioner, there is other evidence, at least equally convincing, that they intended to act and considered that they were acting as individuals. Upon consideration of the entire record, we are of the opinion that we would not be justified in disturbing the determination of the Commissioner that the loss from the transaction was a loss of Ricks and McCreight as individuals. In view of this conclusion, it is unnecessary for us to determine in what year the loss occurred.

*Judgment will be entered for the Commissioner.*